ATCHISON & NEBRASKA RAILROAD COMPANY v. THE CITY OF TROY.

MOTION FOR TEMPORARY INJUNCTION; *Practice on Hearing; Evidence.* Where the allegations in a duly verified petition authorize a temporary injunction, but the affidavits presented by the defendants on the hearing of the application clearly rebut the essential allegations of the petition that no injunction ought to be allowed.

*Error from Doniphan District Court.*

THE *City of Troy*, as plaintiff, filed a petition in the district court against the *Atchison & Nebraska Rld. Co., Frank M. Tracy*, treasurer of the city of Troy, *Alfred G. Otis, R. A. Park*, and *James F. Joy*, as defendants, to have a contract between said plaintiff and said *Railroad Company*, made October 21st 1870, declared a nullity, its further enforcement enjoined, and to recover back from *Otis* and *Park*, naked trustees for accommodation of the parties, the sum of $416.60 paid on the contract by *Tracy*, as city treasurer, to such trustees. The petition was duly verified, and on filing it plaintiff moved for a temporary injunction. Notice of the hearing was given, and defendants appeared and resisted said application, and filed affidavits in opposition to the motion. The district judge, at chambers, on the 24th of June 1872 granted a temporary injunction, as prayed for by plaintiff.

Defendants excepted, and now bring the case here for review. Other facts are stated in the opinion.

*Guthrie & Metcalfe,* and *Otis & Glick,* for plaintiffs in error:

1. The averments of the petition were overborne by the answers, and by the affidavits filed. Joy's answer setting up in himself the sole interest in the subject-matter of litigation, was a full answer to plaintiff's petition; the facts therein must be held to be true: Code, §128; and being true, Joy's answer is a full defense to plaintiff's case, admitting the full force claimed for it: 3 Abbott, 382; 6 Paige Ch., 295.

2. But, in no event, was a case made out upon plaintiff's motion. The affidavit of the attorney verifying the petition is but formal, and not made by one who could know the facts stated in petition of his own knowledge, while the city clerk only pretends to state that the records of his office do not show "Ordinance No. 48," and notice of the election. But such proof was only *prima facie* evidence, and was overcome by proper secondary evidence in the duly certified copies produced by defendants. The affidavit of mayor Smith proves notice of election. The declaration of the vote is *prima facie* proof of a legal election — of notice, and other prerequisites: 19 Ill., 406; 21 How., 539; 5 Iowa, 15. But the publication of Ordinance No. 48 was of itself notice: 10 Wis., 136.

The copies of the city records exhibited by defendants showed affirmatively that the bonds were legally issued, that the city had authority to take the stock, and duly exercised the same; 3 Kas., 104; 7 Kas., 479; and a majority vote on thirty days' notice is shown.

3. But the city acts through its mayor and council, and after the railroad has been built and the bonds issued, and purchased by Joy in good faith, (and equally so, if he only held the bonds as collateral,) it is too late to call in question such bonds, upon any other ground than the power of the city to issue the same. 21 How., 539; 24 How., 287; 1 Wall, 83, 291; 3 Kas., 104; 6 Iowa, 15, 54.

Under §§1 and 2, ch. 60, acts of 1855, page 838, the mayor

and council had full authority to make the contract of October 21, 1870; which was only a contract to sell the city's stock in the railroad company, and make an advantageous arrangement to pay its indebtedness incurred in obtaining such stock.

*H. C. Hawkins, N. B. Wood,* and *Nathan Price,* for defendant in error:

1. A corporation has no powers except those expressly conferred on it by law: 21 Penn. St., 22; 7 Ohio, 234. If the officers of the city of Troy had the power to subscribe for stock and issue the bonds of the city in payment for the same, they never were by any law authorized to make a contract such as this, by which they were to give six thousand dollars and get nothing.

2. Was there ever any authority to subscribe stock or issue bonds? Upon this question the evidence on the part of the plaintiff is in the petition and affidavit of the city clerk, and the city charter, private laws 1860, p. 217. The evidence on the part of the defendants is a lot of affidavits of parties, the general purport of which is that they did not intend to perpetrate any frauds, and some conclusions of law. We think these amount to nothing. They show no facts. Then they offer what purport to be some certificates of certain city officers that certain things were done by the officers of the city two or three years since, and all of them bearing date and certified to at the times we say the frauds were perpetrated of which we complain. Now we say that the charter required that the city register should keep a book or books in which should be entered all the proceedings of the board of councilmen and all the records of the city. This action is pending in Doniphan county, of which the city of Troy is the county seat. At the final trial of this case there can be no doubt but that the court can compel the production of all these books, and ascertain whether the actions which plaintiffs in error claim were had ever were had; and that it is the duty of the court so to do, we refer to 1 Clinton's Dig., 609, and 1 Denio, 9, 14. Under these circumstances, was it not the

duty of the court to grant the temporary injunction to restrain any action on the part of defendants until this issue could be tried and the records themselves examined? and these records are the only evidence of what was done. 33 Mo., 168.

3. Ordinance No. 48, which plaintiffs in error claim was passed by the city council, purports, and defendant Joy in his answer claims that said ordinance was passed by the city council Feb. 8th, 1869. The copy attached to said answer purports to have been published Feb. 8th, 1869. This ordinance ordered an election held April 21st, 1869. Now clearly, if that ordinance ever was passed it was passed at a time when the only authority for municipal corporations to subscribe stock in aid of railroad companies was found in §§ 51, 52 and 53 of general statutes of pages 203 and 204; and on the 27th of February, 1869, these three sections were all repealed: see laws 1869, pages 100 to 110. Now under the decision in *Gordon v. Boder*, 4 Kas., 489, the whole power was gone, the election void, and everything attempted to be done in pursuance of such an election an utter nullity, even though the ordinance had been regularly passed, the election regularly held, and all other things done in the most perfect order.

The opinion of the court was delivered by

KINGMAN, C. J.: The court below made an order temporarily restraining the trustees holding a contract between the plaintiffs in error and defendant in error from collecting the same, and the treasurer Tracy from making any payment on the same. The order also restrained the trustees from letting certain bonds of the city of Troy pass out of their hands. This order is brought to this court for review. It appears that the city of Troy subscribed $50,000 in stock to the Atchison & Nebraska railroad, and agreed to issue its bonds for the same amount in payment therefor. The bonds were to run thirty years, and to bear six-per-cent. interest, payable annually. Subsequently, on the 21st day of October 1870, the city of Troy issued bonds to the amount of $25,000, and placed them in the hands of trustees to be holden as security

for a contract that day made between the city and the railway company, which stipulates among many other things, that if the city will pay $6,000 in certain defined payments, with ten-per-cent. interest thereon, then the bonds issued shall be delivered up by the trustees, and the bonds not issued shall not be required from the city.    This contract had been assigned to James F. Joy before this litigation 'commenced.    The motion was heard upon the petition and answers, which were verified, and upon affidavits.    The only papers used by the plaintiffs were the petition and affidavit of Leon D. Noyes, city clerk of Troy.    The petition averred that the city never authorized Tracy to make the subscription to the stock of the railway company; that the city had no power to make such a subscription and bind the city for its payment; that the city had no power to make such subscription without the matter being first submitted to a vote of the electors of the city, after 30 days' notice had been given, and that no notice was given, and no legal election was held.    The affidavit of Noyes was, that he was clerk of the city of Troy, and as such clerk was the custodian of the books, papers, and records of the city, and that he had examined the books of said city and found no entry showing that any ordinance No. 48 ever passed the city council of said city, nor could the affiant find among the files and records of said office any evidence showing that any notice was given or attempted to be given to vote upon the proposition of subscribing stock and issuing bonds to the Atchison & Nebraska Railroad Co.    The affidavits read on the hearing of the motion by the defendants (plaintiffs in error,) showed with a convincing preponderance, that the ordinance was passed authorizing a submission of the question of taking stock and issuing bonds to a vote of the people; that such question was submitted to a vote of the people after more than thirty days' notice thereof had been given; that a large majority of the voters had voted in favor of the proposition; that Tracy was fully authorized to make the subscription, and that the location of the depot was made in such substantial conformity with the ordinance of the city as

to give entire satisfaction to the mayor and council as they manifested by solemnly ratifying the same.    These facts were made so clear that it is not deemed desirable to state the evidence of them in detail.    Whatever may be made to appear on a final trial, we cannot say, and do not wish to forestall. But the affidavits made out a clear *prima facie* case of all the steps having been taken that were required to authorize the issue of the bonds, if the city had the power; and that question as we understand it, has been decided in this court in favor of the power.    We do not feel inclined however on this hearing to decide this question finally, because if there was no power to issue the bonds, and no power in the city authorities to bind the city to their payment, then no temporary injunction is necessary, for payment can never be enforced, no matter into whose hands the bonds may pass.    As litigation is commenced. it may be proper, if no power exists to create the indebtedness, to close further litigation by a final injunction.

A simple point remains.    The defendant in error claims that the city authorities had no power to make the agreement by which on the payment of $6,000 they were to be released from the payment of $25,000.    Although no express power may.be found we are inclined to think the general power to manage the finances is sufficient to uphold such a transaction. It is not the creation of an indebtedness, but a change of it so advantageous that the surprise is that the defendant in error is willing to raise the question.    Doubtless the owner of the agreement would be willing to have it held void, and consequently does not argue this point in his brief.    We must hold that the temporary injunction was improvidently granted, and the case is remanded with instructions to vacate the order.

All the Justices concurring.