CITY OF TROY v. THE A. & N. RAILROAD CO., *et al.*

1. EVIDENCE; *Records of City Council; Parol Proof of Acts of Council.*
   Where a city failed to provide any book for the record of ordinances
   and in consequence thereof the register simply placed them on file in
   his office, and where it is shown that the register was accustomed to keep
   the minutes of the proceedings of the city council on slips of paper, and
   where the register has given to third parties what purported to be copies
   of an ordinance and subsequent proceedings and resolutions of the coun-
   cil, certified under his hand and the seal of the city, and attested by the
   mayor to be true copies of the record, and such parties acting in good
   faith are induced partly thereby to a large expenditure of money, *held,*
   that in a subsequent controversy between the city and such third parties
   or their assigns, when the city has offered its books of records, in which
   no such ordinance, proceedings or resolutions appear, for the purpose of
   avoiding any liability occasioned thereby, the other party may offer not
   only the copies certified by the register, but also the original ordinance
   and the slips of paper on which appear the proceedings and resolutions
   then on file in the register's office, and may also introduce parol testimony
   to show that the ordinance and resolutions did as a matter of fact pass
   the council.

2. ——— *Effect of Such Proof.* When such facts are thus proven the
   city is concluded thereby as fully as though the same had been recorded
   at length in the records of the city.

3. STATUTES; *Re-Enactment; Continuance.* The rule prescribed by the leg-
   islature that "the provisions of any statute so far as they are the same
   as those of any prior statute, shall be construed as a continuance of such
   provision, and not as a new enactment," is valid and binding.

4. ——— When a city had passed an ordinance submitting to the vot-
   ers the question of taking stock in a railroad company, and thereafter,
   and before any election, the law under which the city was acting was
   amended, but the amendment neither conflicted with nor superseded the
   provisions of the ordinance, *held,* that the rule above quoted was appli-
   cable, and there was no need of a new ordinance.

5. CONTRACT OF CITY; *Validity; Reduction of Liability.* When the City
   of Troy had made a valid subscription of $50,000 to the A. & N. Rail-
   road Co., and had issued $25,000 of its bonds in payment of one-half
   the subscription, *held,* that it could make a valid contract whereby in
   consideration of its stock in the company, and $6,000 in five annual pay-
   ments, it was relieved of any liability for the remaining $25,000 of
   bonds.

### Error from Doniphan District Court.

THE *City of Troy* filed its petition in the district court in
March 1872, against the *Atchison & Nebraska Rld. Co., Frank*

*M. Tracy,* treasurer of said city of Troy, *Alfred G. Otis, R. A. Park* and *James F. Joy,* as defendants, to have a contract between said city and said *Railroad Company,* made October 21st 1870 declared a nullity, its further enforcement enjoined, and to recover back from *Otis* and *Park,* naked trustees for accommodation of the parties, the sum of $416.60, paid on said contract by *Tracy,* as treasurer of said city to such trustees July 1st, 1871. The petition admits that the city, in March 1870, subscribed $50,000 to the capital stock of the Railroad Co., but claims this was illegal, on five grounds: 1st, Tracy was not authorized; 2d, The city could in no case take stock; 3d, The city could not take stock until a majority vote, on thirty days' notice; 4th, For want of such notice of election; and 5th, That no election for this purpose was ever held. The petition sets out the contract of October 1st, as follows:

"This contract made this 21st of October 1870, between the city of Troy in Doniphan county, state of Kansas, of the first part, and the Atchison & Nebraska Railroad Company of the state of Kansas, of the second part, witnesseth: Whereas said city of Troy heretofore made provisions upon certain conditions as set forth in ordinance No. 48 of said city to subscribe for $50,000 of the capital stock of said Railroad Company, and issue the bonds of said city in payment thereof: and whereas said city of Troy did subscribe said stock, and in pursuance of the agreement has issued its bonds for $25,000, now therefore, it is agreed as follows: The said Railroad Company hereby releases said city of Troy from the issue of the other $25,000 of said bonds, in consideration of which said city of Troy hereby sells, assigns, and surrenders its said $50,000 of stock to said Railroad Company, to be canceled or otherwise disposed of as said Railroad Company may direct. The $25,000 of bonds of said city (hereby released) are dated July 1st 1870; are of one thousand dollars each, are payable July 1st, 1900, and bear six per cent. interest, payable annually, with interest coupons attached, and are to be placed in the hands of A. G. Otis of the city of Atchison, and R. A. Park, cashier of the Atchison Savings Bank, or his successor in office, of said city of Atchison, state of Kansas, as trustees, to hold the same subject to this contract, and to be surrendered to said city of Troy upon the payment to them (the trustees) at said savings bank for the

use of said Railroad Company or its assigns, the sum of $6,000 with interest from this date at the rate of ten per cent. per annum, as follows, viz.: on the first day of July 1871, the interest to that date to be paid; and on the 1st day of July in each year thereafter, for five years, one-fifth of the principal and interest to be paid; but the whole or any part of principal or interest may be paid at any time. * * * If said city of Troy shall fail to make the aforesaid payment or any part thereof at the time and place specified, the said trustees shall deliver said bonds to said Railroad Company, or order or assigns, said Railroad Company to carry out in good faith the provisions of said ordinance No. 48 in relation to depot.    In testimony whereof," etc.

This contract was assigned to *James F. Joy* before suit was brought.    The petition avers that this contract is void because, 1st, the bonds of July 1st were ante-dated; 2d, said bonds are illegal because the subscription was void; 3d, the bonds were not issued in accordance with the subscription; 4th, no stock was issued to city; 5th, the city's agents (mayor and council) had no authority to sell its stock; 6th, no law or ordinance authorized the city to make said contract; and 7th, Tracy was imposed upon with respect to the location of the depot.    The petition alleges that Joy has an interest, but claims that it was acquired with notice.    It alleges the payment by *Tracy* of said $416.60 on the contract, and seeks to recover the same back.    The answer of *Joy* denies plaintiff's case, and sets up the incorporation and purpose of the Atchison & Nebraska Railroad Company, the passage of ordinance No. 48 to subscribe $50,000 to the capital stock, the vote, the appointment of agent, and the subscription of stock, the compliance with terms of ordinance, and approval of location of depot by city, and thereafter his purchase in good faith. The Railroad Company filed a like answer.    The answer of *Otis* and *Park* shows that they are naked trustees, have received and paid out the former payment in good faith, and without notice, and disclaim.    The reply was a general denial. The action was tried at the December Term 1872 of the district court.    The facts found, and the questions raised as to the competency and admissibility of evidence, are sufficiently

34—11 KAS.

stated in the opinion, *infra*. Judgment was entered for the defendants, and the plaintiff brings the case here for review.

*Nathan Price*, and *N. B. Wood*, for plaintiff in error:

1. One of the first questions arising in this case is, whether the action of the city council with reference to the subscription of stock, the passage of ordinance No. 48, and the election, etc., can be shown by parol. This question was raised in the court below, and such evidence was admitted over the objections of plaintiff. This ruling of the court was erroneous. See city charter, Private Laws of 1860, p. 220, § 15; Dillon on Munic. Corp., § 247; 33 Mo., 168, 262. The court finds that no record is or ever was in existence showing the passage of ordinance No. 48. The objections and exceptions to testimony, and the findings of fact, fully and fairly present the question as to whether the passage of ordinances, and the other official acts of the municipal authorities, can be shown by parol. We say that the city charter and the above authorities fully establish the negative, and if this is the case, the court erred in refusing the injunction.

2. The ordinance never was approved. (See § 13 of charter; 2 Kas., 115.) It was and is void upon its face.

3. The contract is void; 4 Wall., 598; 2 Kas., 115; 23 N. Y., 439.

4. The ordinance, admitting it ever to have had a valid existence, only authorized the city council to take stock in the railroad. This was never done, but the council attempt to give $6,000 for nothing, and issue $25,000 of bonds as collateral security for the payment of the $6,000.

5. The law under which the ordinance was passed, (§§ 51, 52 and 53, pp. 203 and 204, Gen. Stat.,) was repealed ten days after the passage of the ordinance, and a law wholly different went into effect. (Laws 1869, p. 108.) This left no power or authority to sustain the ordinance, and the election, and all proceedings done under it, are void. 21 Penn. St., 22; 7 Ohio, 234; 13 Ohio St., 311; 15 Ohio St., 437; 4 Kas., 489; 10 Wall., 676.

6. The plaintiff had a right to show, and did show, the absence of any record regarding the action of the city officers as to these whole proceedings. 1 Denio, 9, 14.

7. Said ordinance No. 48 provides certain conditions upon which the council may subscribe stock, and only on those conditions could it be done. These never were complied with. 11 Ohio St., 183.

8. No notice whatever was ever given of any election. Bouvier, in his Law Dictionary, shows an *ordinance* and a *notice* to be very different things; and we insist that, under the circumstances of this case, the contract not being a negotiable instrument, and the bonds never having passed into the hands of innocent holders, any such irregularity as that will be sufficient to entitle plaintiff to all the relief demanded in this action.

9. The $416.60 were paid to Otis and Park under protest, and with notice that plaintiff would sue to recover it back. Otis and Park paid it to Joy at their peril, and plaintiff should now have judgment against them for it.

*W. W. Guthrie*, for defendants in error:

1. As to ordinance No. 48. Its approval and deposit with the city register by the proper authorities, constituted it a record of the city. Civil Code, § 355; Dillon Munic. Corp., 348, § 355; 4 Ohio, 83. Would it be necessary to produce the legislative journals, to lay the foundation for proof of a private act? The court finds that this ordinance (the original) was a part of the files, with the approval of the mayor, the attestation of the register, and indorsement of publication thereon, and that it was produced in court by the register, and that a certified copy thereof had been furnished by the proper officers, under seal of city. The production by proper officers is sufficient evidence; (4 Mich., 156;) and certified copies are original evidence: Dillon Mun. Corp., § 241; Statutes 1855, p. 846, § 28, which is by § 2 of Troy City Charter, a part thereof. See § 2, City Charter, 1860.

The certified copies delivered to defendant are full evidence

of existence of all matters, thus certified as fully as if appearing by *copy* in book of records. Code, § 355; 2 Ohio St., 246; 11 Mo., 591; 9 Cranch, 98; 24 How., 374. The ordinance takes effect from approval (§ 13,) of which no record is made except upon the original. But at the best, § 15 is only *directory*. And any failure *even to record* would not invalidate proceedings actually had. Dillon Mun. Corp., § 237; 23 N. Y., 142.

2. As to secondary evidence: If no complete record, we could introduce parol testimony. 7 Kas., 415; Dillon, §§ 237, 238; 18 Ohio, 545. The plaintiff seems to argue that nothing is *a record* except *a copy written in a book* by a recording official. The court finds that the original ordinance, duly attested, is on file in the proper office, in the custody of the proper officer. What gives it life, *enactment* or *copying* it into a book?

Again: The court finds "that *no record* was ever made," and then afterward finds "that *minutes of proceedings were made*, but without having been first *copied into a book*, certified copies, signed by the mayor and register, and attested by the city seal, were made out as copies *of the records*," and since then these minutes are not found. The plaintiff's position is, that a city may, upon the faith of *its proceedings had*, deal with other parties to its advantage, and then by the destruction of its records, become relieved of all liability. We insist that the original minutes were *records*, and duly attested and on file in proper office, proved themselves; that copies were original evidence; that minutes of proceedings kept on slips of paper, unbound, are just as much records as if the sheets of paper had been bound.

3. As to the election: Nothing in the city charter requires any notice to be given of elections; nor is it shown any ordinance requires notice. But the court finds that notice was in fact given in the most effectual manner by publication of the ordinance and posting up of copies.

The declaration of the vote is presumptive evidence of a legal election. The city having the authority, the issuance

of the bonds is presumptive evidence of every legal prerequisite thereto.   10 Wis., 136; 5 Iowa, 15; 29 Conn., 174; 19 Ill., 406; 21 How., 539; 15 Ind., 419; Dillon, § 417.

But the *record* as shown in the copies of records, attached to defendants' answer found by the court to have existed, shows that the city duly exercised its authority to take the stock. 19 Ill., 406; 3 Kas., 104; 7 Kas., 479.

4. The city acts through its mayor and council, and after the railroad has been built, and the bonds issued and purchased by Joy in good faith, (and equally so, if he only held the bonds as collateral,) it is too late to call in question such bonds, upon any other ground than *the power* of the city to issue the same. 21 How., 539; 24 How., 287; 1 Wall., 291; 3 Kas., 104; 6 Iowa, 15, 54; Cooley's Const. Lim., 215; Dillon, § 416.

5. But it is said that the depot was not built *at or near* to the center of the quarter-section as originally designated. The court finds the location was made *as near* as practicable, and finds an express ratification of the location was made by the proper city authorities.

6. The bonds were ante-dated; but such bonds were not dated until after due under terms of subscription, and hence in judgment of law were not ante-dated. 19 Ill., 406.

7. It is argued that the election was a nullity by reason of the repeal of the law existing at the time ordinance No. 48 was passed.   But this question is not in the case.   No objection to the bonds being made in the petition on this ground. But conceding that this question is in the case: §§ 51, 52 and 53, pp. 203, 204, Gen. Stat., were repealed, *only by amendment* substituting others containing substantially the same provisions as those in act amended, and thereby, by express statute, are made a *continuation of the former provisions,* (first clause of § 1, ch. 104, Gen. Stat.)   There was no "repeal, clear and absolute, with effects of a very sweeping character," as in *Gordon v. State,* 4 Kas., 500.   There was no repeal, only a substitution of certain sections for other sections, differing from the first only in form.

City of Troy v. A. & N. Railroad Co.

But if we admit the repeal of these sections, and the re-enactment of those in acts of 1869, ordinance No. 48 was not thereby repealed, or its effect in any wise impaired. The amendment or repeal of a part of a city charter cannot affect any ordinance passed thereunder, except in so far as the provisions of such ordinance are thereafter unsupported by such charter. 31 Penn. St., 517. In this case, more than thirty days elapsed after taking effect of amendatory act, and before the election; and every proposition requisite to the subscription is in accordance with this ordinance, which is fully supported by the act of 1869.

7. The contract of October 21, 1870, was a valid contract, within the authority of the city council to make, and upon a valid consideration. If not upon a legal liability, it was at least a compromise of a doubtful claim: 5 Ohio St., 488; 1 Barb., 584; 7 Pick., 18. The right to settle claims is *inherent* in municipal authorities: Dillon, § 398; 33 Conn., 497; 14 Ill., 193.

The opinion of the court was delivered by

BREWER, J.: In March, 1870, one Frank M. Tracy, a member of the council of the city of Troy, claiming to be duly authorized by said city, made a subscription to the amount of $50,000 in the name of the city to the capital stock of the A. & N. Rld. Co. In payment of half the subscription, $25,000 of the bonds of said city were issued. Thereafter, and on the 21st of October 1870, the city and the company made a contract by which the city agreed to sell its stock and pay $6,000, in five annual payments, on being released from its obligations to issue the $25,000 remaining due on the subscription; provided that $25,000 of its bonds should be placed in the hands of trustees as security for the $6,000. As the time for the first annual payment drew near the city brought its action to restrain the treasurer from making such payment, to have the contract adjudged void, and the trustees enjoined from transferring the bonds to other parties, and required to return them

Statement of case.

to plaintiff for cancellation. A preliminary injunction was allowed by the district court, which was thereafter set aside by this court. (*A. & N. Rld. Co., et al., v. City of Troy,* 10 Kas., 513.) On the final trial judgment was rendered in favor of the defendants, and now the city alleges error and asks a reversal of this judgment.

The question which first meets us is as to the validity of the original subscription. It is insisted that the subscription was void because unauthorized. As prerequisites are named,

Subscription
to stock.
Validity;
requisites.

an ordinance, prescribing terms of subscription, and ordering a submission of the question to the voters; an election, resulting favorably to the subscription; and some act or resolution of the council designating the party to make subscription. Were these wanting? Attached to the answer of the defendant Joy is what purports to be ordinance No. 48 of the city of Troy, certified by the city register under the seal of the city, and attested by the mayor to be a true and correct copy of such ordinance, as the same appears of record, which ordinance prescribed the terms of subscription and provided for an election; also, a similarly attested copy of the record of the city council showing a canvass of the votes cast at the election called by the ordinance; also, a similarly attested copy of the same record appointing Frank M. Tracy to make the subscription. The district court in its findings found that this ordinance was duly passed,

Findings of
court.

and was legal and valid; that an election was duly held, and resulted in favor of the subscription; that a canvass was duly made, and the result declared; that Frank M. Tracy was duly appointed to make, and did make, the subscription; that H. Boder was duly appointed to vote and did vote the city stock at the annual stockholders' meeting. It also found that duly certified copies, attached as above stated to the defendant Joy's answer, were made out by the city register, attested by the seal of the city and given to defendant. On the other hand it found that ordinance No. 48 had never been recorded in any book, but was simply filed in the office of the city clerk, as was the custom of the

city at the time. Also that no record was ever made showing Tracy's or Boder's authority, or showing that an election was ever ordered or held except that minutes of the proceedings showing the above were kept by the register on slips and pieces of paper, but never entered in any books, and also that there was and is no copy or record either on slips of paper or otherwise showing that ordinance No. 48 ever passed the city council, though the ordinance itself is on file in the office of the city register, and was by him brought into court. It also found that the Railroad Company was induced in part by said subscription to change the original location of its road at an extra cost of $28,000. Turning now to so much of the testimony as is preserved in the plaintiff's bill of exceptions, we find that one Leonard Smith who had been mayor of the city was permitted to testify over the objection of the plaintiff that at the time of the supposed passage of the ordinance the city had no book deemed suitable for recording the ordinances, and so they were kept on file until one should be purchased, and that the register was accustomed to keep the minutes of the council meetings on slips of paper. He further testified that ordinance No. 48 was passed unanimously by this council, that it was approved and published, and a certified copy furnished the Railroad Company; that an election was held, notice thereof having been given, and that the council met and canvassed the votes, and that a large majority was in favor of the subscription. Under these circumstances the question is presented by counsel, as to what constitutes the records of a municipal corporation, and how far parol testimony is admissible to prove the acts of such corporation. As the record does not purport to contain all the testimony no question can be raised here as to its sufficiency to support the findings. They must be taken as proven. The record is the best evidence of the proceedings of a city council, and yet it is but *evidence*. It may be evidence of such high order that it cannot be contradicted, it may import absolute verity like the records of a

1. Records of city council; parol proof of proceedings.

court. But nevertheless it exists only as *evidence* of acts done, and not as *the acts* themselves. If it be lost or destroyed, the rights created, the duties imposed, and. the responsibilities assumed by the acts of the council, are not lost or destroyed. They exist, and can be enforced; and all that has resulted is a change in the kind and manner of proof. It was the duty of the register to make and preserve a record of all the proceedings of the council, a duty imposed by the charter of the city. (City charter, Private Laws 1860, p. 220, § 15.) It was a duty which he could have been compelled to perform at the instance of any party interested, or for the refusal to perform which any person injured thereby could maintain an action for damages. He exercised no supervisory or restraining power in behalf of the corporation or the public over the council, nor could they be prevented from managing the affairs of the corporation according to their judgment by his omission or refusal to record the evidence of their acts. If he omitted, they could require the omission to be corrected. If he refused, it was ground for removal. (*State v. Allen*, 5 Kas., 213.) Yet this is the record of the corporation, made by its own officers, and under its own control. If the council may not be thwarted by the omission or refusal of its clerk, *a fortiori* should a stranger dealing with it in good faith, and influenced to a large expenditure on the strength of an actual vote, not suffer in consequence of a like omission. It must be borne in mind that there is no attempt to show by parol that something was not done which the record shows was done. Dillon in his work on Municipal Corporations, p. 262, § 237, says: "But a *distinction* has sometimes been drawn between evidence to contradict facts stated on the record, and evidence to show facts *omitted* to be stated upon the record. Parol evidence of the latter kind is receivable unless the law expressly and imperatively requires all matters to appear of record, and makes the record the only evidence." And in the next section he adds: "Where the records of a municipal corporation have been so carelessly

2. Record and parol proof to be considered; effect.

and imperfectly kept as not to show the adoption of a resolution, or other act of the city council, and there is no written evidence in existence, parol testimony may be admitted; *e. q.,* to show that certain work was done by authority of the city, by proving the passage of a resolution of the council, the appointment of a committee to make the expenditure, their report after the work was done, and its adoption by the council." See also *Ross v. Madison,* 1 Ind., (Carter,) 281; *Bigelow v. Perth Amboy,* 1 Dutch., N. J., 297; *Bank v. Dandridge,* 12 Wheat., 64; *Hutchinson v. Pratt,* 11 Vt., 402. In this last case Williams, C. J., uses this language: "When there is an omission to make record, the rights of other persons acting under or upon the faith of a vote not recorded ought not to be prejudiced."

In this case it must be noticed that there is not an entire destitution of written evidence. Copies of the ordinance, the proceedings of the council in the canvass of the votes, and the appointment of Tracy to make the subscription, duly certified by the register under the seal of the city, and attested by the mayor to be true copies of the record, are made out and given to the railroad company at the time of the subscription. These certified copies are by statute made evidence both for and against the corporation. (Code, Gen. Stat., p. 701, § 379.) Among the files in the register's office are found the original ordinance and the minutes of the proceedings of the council, written out on slips of paper. These correspond with the certified copies furnished the railroad company. These fragments may not come up to the true legal idea of a record, but they are certainly important items of testimony, when the city is seeking to impeach and have set aside the evidence of the proceedings of its council furnished by its own officers under its own seal. We think the court did not err in permitting the railroad company to support the certificate of the register, as against the silence of the record, by the files and papers of the register's office and the parol testimony.

Again, it is claimed that the ordinance provided as a con-

dition of the subscription that the depot should be located at or
near the center of a certain named quarter-section
and never removed further from the court-house
than that. The findings show that it was in fact over one-
eighth of a mile further. But the ordinance also provided
that the depot should be at the junction with the St. Joseph
and Denver City Railroad, and it does not appear from the
findings or testimony that this junction could have been made
at any point nearer the center of the quarter-section, or the
court-house. It also appears that the city after the location
ratified and approved it.

*Location of depot. Contract; violation.*

It is also claimed that the law under which the ordinance
was passed, (§§ 51, 52 and 53, pp. 203, 204, Gen. Stat.,) was
repealed ten days after the passage of the ordinance, and a
law wholly different went into effect, (Laws 1869,
p. 108,) that left no power or authority to sustain
the ordinance, and therefore the election, and all proceedings
done under it were void. Since the decision in *Gordon v.
The State*, 4 Kas., 489, the legislature has established a new
rule as to the effect of changes in the statutes. The last
sentence of the first paragraph of § 1 of ch. 104, Gen. Stat.,
999, reads: "The provisions of any statute, so far as they are
the same as those of any prior statute, shall be construed as a
continuation of such provisions, and not as a new enactment."
Now, the law of 1869 contained substantially all that was in
the law of 1868, and also some additional provisions. The
effect therefore of the statutory rule just quoted, if valid,
was to continue the law of 1868 in force, with the additions
made by the amendment of 1869. Now, ordinance No. 48,
though drafted under the law of 1868, contains nothing which
would conflict with or be superseded by the additional pro-
vision of the amendment of 1869; at least nothing which
counsel have deemed of sufficient importance to call to our
attention. It would seem therefore that the ordinance was
not superseded or repealed by the amendment of 1869, and
that an election under it might properly be held, and bonds
issued. We have heretofore considered the power of the

*3. Statutes; re-enactment; continuation.*

legislature to establish such rules of statutory construction, and the effect of them. *Gilleland v. Schuyler,* 9 Kas., 569; *The State v. Boyle,* 10 Kas., 113; *The State v. Crawford,* supra, 32. It does not appear to us that § 16 of art. 2 of the constitution conflicts with this rule. The purpose of that was to make the amended section or sections contain the whole law as it was thereafter to exist, and not to prevent the legislature from continuing in force the unchanged portions of the amended law. The rule in effect says the amended law shall be retrospective in its operations so far as it is the same as the prior law. This, in a question like the one at bar, is within the legislative power.

One question more deserves notice, and that is as to the power of the city to make the contract of October 1870. It was really considered and decided when the case was here before. Counsel press the points again, and a single word or two may not be inappropriate. The subscription, as we have seen, was valid. The company had performed all the conditions required of it, and the city could have been compelled by mandamus to issue $25,000 of its bonds. The city relieved itself of this liability by the payment of $6,000 and the sale of its stock. The city had, by the terms of its charter, power to sue and be sued, to contract, and be contracted with, to purchase, hold and receive, and to sell, lease or otherwise dispose of, property, real, personal and mixed, within and without the city, and all other powers and privileges usually granted to incorporated bodies. (Private Laws 1860, p. 217, §§ 1, 2; Laws 1855, p. 838, § 1.) These powers were vested in the mayor and council; (§ 3, charter.) That a contract and settlement like that is within the scope of the ordinary powers of a private corporation, none will question. And it seems to us that under the sweeping grants of the charter, without any trespass on the rule that a municipal corporation takes nothing by implication, a like power was vested in the plaintiff. See as to the powers of a municipal corporation in the settlement of

5. Power of city to make contract to reduce its bonded liability.

Am. Cent. Ins. Co. v. McLanathan.

claims, Dillon on Munic. Corp., § 398, and cases cited in the notes.

The judgment of the district court will be affirmed.

All the Justices concurring.