No. 32,721

FRED G. HILL, *Appellee*, v. THE ETCHEN MOTOR COMPANY (and/or ETCHEN AUTOMOBILE CORPORATION) and THE AMERICAN EMPLOYERS INSURANCE COMPANY, *Appellants*.

(56 P. 2d 103)

Opinion filed April 11, 1936.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris,* all of Wichita, for the appellants.

C. A. Matson, I. H. Stearns, E. P. Villepigue and Earl C. Moore, all of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from an award under the workmen's compensation act, the question being whether the claimant met with personal injury by accident arising out of and in the course of his employment.

At the hearing before the examiner, employment of the claimant by the respondent was admitted, and the evidence taken bore on the question above stated. As a result of that hearing, an award in favor of the claimant was made. An appeal to the district court resulted in an award which in the aggregate was the same as that first made. The appeal to this court followed.

This court's jurisdiction in compensation cases is limited to questions of law, and whether a judgment is supported by substantial, competent evidence is a question of law as distinguished from a question of fact. (*Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70.) Our function in this case is to determine if there is evidence to sustain the judgment of the district court the claimant did sustain personal injury by accident arising out of and in the course of his employment. *Fair v. Golden Rule Refining Co.*, supra; *Goodwin v. Sinclair Pipe Line Co.*, 136 Kan. 8, 12 P. 2d 842; *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820, and cases cited, and many other cases are to this effect.

In examining the evidence we therefore do not detail those portions which tend to support respondent's claim that no accident occurred, or that tend to show claimant's physical condition was not the result of the claimed accident. Claimant was an automobile mechanic. On October 24, 1934, while working under a car, he was stricken with a burning pain in the center of his chest. He rested a few minutes and then resumed work, having no more difficulty that day. The next afternoon he was working on some shock absorbers on a car and to get under the car was lying on a dolly which seems to have had rollers on it. Using a ten-inch wrench, he attempted to loosen a nut. The first time he pulled, the dolly rolled and the nut did not loosen. He then braced his feet and while pulling a steady hard pull on the wrench, he was stricken with a pain about the center of the breast bone. Two statements of the claimant were: "I think my condition is the result of pulling on the wrench and strained myself. I was in good physical condition before this

as far as I know," and, "I did not slip that I know of. I don't know if the nut broke loose or not." After he was stricken, other workmen took him to a doctor's office, where he was given treatment and sent to a hospital. The doctor was the only medical witness called. He testified that claimant showed all the signs of acute shock and that he diagnosed a coronary thrombosis. After defining the meaning of the term, he stated the heart muscle becomes weaker on account of lack of blood supply until eventually, either due to some effort or emotion, whatever it might be, the safe limit is passed where the excess force of the heart is not sufficient to carry on the normal function, and heart failure, either immediate or delayed in its effect, occurs. In answer to a hypothetical question, the doctor stated the sudden pulling and effort claimant had put on the wrench aggravated, activated or hastened the condition of coronary thrombosis, and that claimant was unable to perform work at the time of the hearing, and that in his opinion he would never be able to again perform manual work. On cross-examination, he stated:

"We usually think of either emotional or physical effort as being the last thing where the heart fails to respond to its usual effort; I will put it this way, if you will permit me, Mr. Powers—I will say this: If the man, for instance, instead of working had been sleeping or reading a book, I am sure it wouldn't have happened at that time, considering the extra effort being the cause, without which it wouldn't have happened."

After being questioned about when a coronary thrombosis might occur and disable the stricken person, the following questions were asked and answers returned:

"Q. All you know is he was pulling on the wrench and had the attack? A. Yes.

"Q. And you say since it happened then you feel that is the thing that finally produced the last stage? A. We usually try to connect the attack with the last physical effort, but as I say there are many cases in which no physical effort is made at all and it will occur. In my opinion, I think it is the last physical effort that brought it on."

Respondent offered no testimony.

Respondent argues that what happened was while claimant was doing his regular work in the manner in which it was ordinarily done, that there was no slipping, falling or other unexpected occurrence, and that there was no accident—in other words, the heart attack under the circumstances was not an accident for which he could recover compensation.

In *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, claimant was working in a quarry, breaking rock with a large sledge. He seemed to be in good health prior to the time he was observed to be bleeding profusely from his mouth and nostrils. He died before medical aid could reach him. It was insisted there' was no accident. This court said:

"An accident is simply an undesigned, sudden and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." ' (p. 773.)

After reciting some of the circumstances, it was further said:

' "There was no direct evidence of extraordinary exertion suddenly displayed. When last observed, the deceased was working in the manner habitual to the employment. The fact remains, however, that an extraordinary and unforeseen [thing] suddenly and unpremeditatedly occurred, and presence of all the essential attributes of accident cannot be gainsaid." (p. 773.)

After reviewing authorities as to distinction between injury on the one hand, and accident producing it on the other, as applied to the facts of the case, it was further said:

"The evidence warranted a finding that the physical structure of the man gave way under the stress of his usual labor. He certainly did not intend to kill himself by breaking rock and loading cars at a price per car. He did not know, or in any event he was inattentive to, the limited power of his blood vessels to resist blood pressure aggravated by vigorous muscular effort. Out of this ignorance or miscalculation of forces came misadventure, and the term accident applies to what happened to him, as clearly as it would apply to what happened to the car had it broken down under the assumed circumstances." (p. 777.)

In *Gilliland v. Zinc Co.*, 112 Kan. 39, 209 Pac. 658, where compensation was allowed in the lower court, it was held:

"A workman employed to haul ashes at a smelting plant became overheated at his task and drank ice water, which caused congestion of the vascular system, from which he died within one hour. *Held,* that within the scope and purpose of the workmen's compensation act, the death was caused by an accident arising out of and in the course of his employment." (Syl. ¶ 1.)

In *Stringer v. Mining Co.*, 114 Kan. 716, 220 Pac. 168, many authorities being cited, it was held that the extra effort used by the workman in sawing heavy timbers and causing a hemorrhage was an accident under the statute. See, also, *Riggs v. Ash Grove L. & P. C. Co.*, 127 Kan. 91, 272 Pac. 153, where sufficiency of a petition for recovery under the former workmen's compensation act was under consideration.

In *Harmon v. Larabee Flour Mills Co.*, 134 Kan. 143, 4 P. 2d 406,

the deceased, who had lead a rather sedentary life, obtained employment with respondent and started work on Saturday. He did not work Sunday, and on Monday while engaged in lifting heavy sacks of flour, he suffered a heart attack and shortly died. From an award in favor of his dependents, the employer appealed to this court which affirmed the award, holding that, where the physical structure of the man gave way under the stress of his usual labor, the accident was compensable, citing in support *Gilliland v. Cement Co.*, supra.

And in the recent case of *Lee v. Lone Star Cement Co.*, 142 Kan. 349, 46 P. 2d 864, where it was contended the deceased workman died of disease in no way related to the employment, an allowance of award to defendants was upheld, this court saying:

"It is no longer an open question that although a workman is afflicted with a disease which eventually culminates in his death, neither he nor his dependents are thereby barred from the right to compensation if he actually suffered an accident in the course of his employment and which arose out of it and if such accident intensified or aggravated his affliction or contributed to his death." (Citing cases.) (p. 351.)

Appellant directs our attention to *Meredith v. Seymour Packing Co.*, 141 Kan. 244, 40 P. 2d 325, and *Williams v. Wilson*, 129 Kan. 215, 282 Pac. 574, and insists that they are decisive of the case at bar. We concede elements of similarity of facts, the difficulty, however, is that in the first of those cases there was a finding by the commissioner and also by the district court, and in the second case by the district court, that the claimant's incapacity did not arise out of and in the course of his employment. In neither of the above cases is there anything said which is inconsistent with the cases heretofore reviewed.

Appellant also cites *Zelinkoff v. Mountain States Brush Mfg. Corp.*, 135 Kan. 247, 9 P. 2d 649, where claimant appealed from refusal to make award. There was failure to show accident, and this court affirmed the lower court.

We have examined the other Kansas cases cited and do not find them controlling. We also note citation of authorities from other states, but in view of our former decisions, it is not necessary they be analyzed.

In our judgment, the evidence before the commissioner, and later before the district court, warranted the conclusion that even though claimant, unknown to himself, had an affliction of his heart or cir-

culatory system that eventually might cause his death or render him incapable of manual labor, the hard pull on the wrench aggravated his condition, and caused a speeding up of a result that might or might not have occurred in the future. Certainly as to the claimant, it cannot be said he intended by the pull on the wrench to cause a thrombosis that might cause his death or render him an invalid. When claimant braced his feet and exerted a strong pull on the wrench, so far as he or anyone else was concerned, wha then happened to him was undesigned, sudden, unexpected and of an afflictive character—or, in shorter form, it was an accident. It arose out of and in the course of his employment, and the district court properly held he was entitled to compensation.

The judgment of the district court is affirmed.