No. 34,570

JOHN F. EARHART (Claimant), *Appellee*, v. THE WIBLE ICE & COLD STORAGE COMPANY (Respondent), *Appellant*.

(95 P. 2d 366)

Opinion filed November 10, 1939.

*John Madden, John Madden, Jr.,* and *Howard C. Kline,* all of Wichita, for the appellant.

*William J. Wertz, Vincent F. Hiebsch, Forest V. McCalley* and *Milton Zacharias,* all of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from an award under the workmen's compensation act. The examiner found that the claimant was suffering from a temporary total disability arising out of his employment, and an award in his favor was made. This award was affirmed by the commission, and, on appeal, was affirmed by the district court. The appeal to this court followed.

The only error assigned is that there is not sufficient evidence as a matter of law to support the award and judgment.

In March, 1938, claimant was employed by respondent as a shift engineer and worked until October 15, 1938. Claimant testified that he was in good physical condition until September 23, 1938, and that he had never been subject to any heart trouble. There was no evidence introduced to contradict the testimony as to his previous good health.

On September 23, 1938, claimant and one Barackmann, another engineer, were endeavoring to start a large steam-driven ice machine. The undisputed testimony is they tried for some fifteen or twenty minutes and were unable to start the machine. There was a lever on the machine two and one-half to three feet long which was pulled up and down to "rock" the valves and start the machine.

The claimant Earhart testified he was pulling on this lever; that it was necessary to a give a short, quick jerk to operate it; that he felt a sudden pain in his left side over the heart, like a knife. He got dizzy for a little while and stepped back.

He continued to work out his shift, which ended at four o'clock in the afternoon. He went home, but continued to feel ill; about six o'clock he walked some two blocks to a drugstore. While in the drugstore he became dizzy, fainted, and was taken home by one of the employees. The family physician was called, but did not come to see claimant that night. Claimant went to work the next day, but his wife and son got in touch with a physician who sent claimant some medicine and instructed him to go home and go to bed. The son brought the medicine to the plant, but claimant did not go home.

He was examined by the physician that night. The physician diagnosed the trouble as an organic heart condition—something permanently wrong with the heart—prescribed certain medicines and advised claimant to lie on his back as much as possible with his feet up. He also suggested to claimant that he not go to work for a while. However, claimant continued to work until October 15, 1938.

Claimant's superior at the ice plant, a witness on behalf of appellant, testified that he was standing close to the claimant and observed him rocking the valves; they were having trouble in getting the machine started; they were more than fifteen minutes getting it started. In answer to the question if he saw claimant "exert any effort to speak of in rocking those valves," the witness stated: "Well, yes, he did, they were hard to move at that time, and he was trying to move them, but they failed to move right then."

A part of the testimony of claimant's family physician was as follows:

"Q. Now, Doctor, assuming that prior to the twenty-third day of September, 1938, the claimant, Mr. Earhart, was in apparent good physical condition, and that he had not complained of any pains in his heart, or ailments, and that on the twenty-third day of September, 1938, he was working for the respondent, the Wible Ice and Cold Storage Company, and in the act of starting an ice machine, which required him to lift up on a lever which required considerable lifting, and that while doing so he felt a sharp pain strike in and about the heart, and that he became dizzy and since that time has been suffering with dizzy spells and weakness, and had the heart which you found to exist at your examination on the twenty-fourth day of September, 1938, I will get you to state if, in your opinion, the lifting and the jerking on the handle in starting that ice machine as testified to, could produce the condition you found in Mr. John Earhart, the claimant? A. I think it could.

"Q. I will ask you to state if, in your opinion, assuming those facts to be true, if, in your opinion, that would produce the condition you found in Mr. Earhart? A. It would.

"Q. Doctor, the condition, an organic heart condition, as you found, I will ask you to state whether or not it takes very much of a strain to produce a condition like that. A. It does not in many cases take very much strain if a person is in a certain position, especially a lifting position."

A physician called on the part of appellant testified that a heart lesion could be made worse by a strain, and that the jerking and straining by claimant in an effort to start the machine could have aggravated a latent heart disability.

A second physician, called on the part of the appellant, testified in part as follows:

"A. I said the enlargement may be due to disease of the heart valves, the enlargement. The enlargement would show, but I cannot tell from the electrocardiogram whether this enlargement is due to, maybe a rupture of the heart valves or disease of the kidneys, or a disease of blood vessels, I cannot tell. I can only say this heart must be larger on the left side.

"Q. And that could be caused by a valvular heart lesion? A. Yes, it could be caused by a valvular heart lesion.

"Q. A valvular heart lesion can be caused by a rupture, or is a rupture of a vessel or of a valve? A. Yes. They have been described, ruptures of the valves by accident.

"Q. An accident or sudden strain could cause a rupture of the heart, couldn't it, of the valve? A. It may.

"Q. And the rupture of the valve itself could cause an enlargement of the heart? A. It could."

A neutral physician testified that claimant's physical condition was such that he could not engage in manual labor—"I would say almost totally disqualified to do any manual labor in his present condition."

In *Hill v. Etchen Motor Co.*, 143 Kan. 655, 56 P. 2d 113, the factual situation was similar to the case at bar. In that case it was said:

"In our judgment, the evidence before the commissioner, and later before the district court, warranted the conclusion that even though claimant, unknown to himself, had an affliction of his heart or circulatory system that eventually might cause his death or render him incapable of manual labor, the hard pull on the wrench aggravated his condition, and caused a speeding up of a result that might or might not have occurred in the future. Certainly as to the claimant, it cannot be said he intended by the pull on the wrench to cause a thrombosis that might cause his death or render him an invalid. When claimant braced his feet and exerted a strong pull on the wrench, so far as he or anyone else was concerned, what then happened to him was undesigned, sudden, unexpected and of an afflictive character—or, in shorter form, it was an accident. It arose out of and in the course of his employment, and the district court properly held he was entitled to compensation." (p. 659.)

It was the duty of the trial court to weigh the evidence. This court can do no more than pass on the question of law as to whether there is testimony to sustain the findings. We think the judgment was sustained by substantial, competent testimony, and under the rule often announced (*Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70; *Hill v. Etchen Motor Co.*, supra), the judgment of the trial court must be affirmed. It is so ordered.