No. 40,450

MARICE PINKSTON, Widow of John M. Pinkston, Deceased, Claimant, *Appellee*, v. RICE MOTOR COMPANY, Respondent, EMPLOYERS MUTUAL CASUALTY COMPANY, Insurance Carrier, *Appellants*.

(303 P. 2d 197)

Opinion filed November 3, 1956.

*E. P. Villepique,* of Wichita, argued the cause, and *I. H. Stearns,* of Wichita, was with him on the briefs for appellants.

*Byron Brainerd* of Wichita, argued the cause, and *David W. Wheeler* and *Edwin G. Westerhaus,* both of Marion, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: In this workmen's compensation case the commissioner made findings and an award in favor of claimant, the widow and sole dependent of a deceased workman, which the trial court approved and adopted. The respondent and insurance carrier appeal, and contend the trial court erred as a matter of law in two respects in rendering judgment against them: *First,* in finding there was substantial competent evidence that (1) the decedent met with personal injury by accident, (2) the accidental injury arose out of and in the course of decedent's employment, (3) the relationship of employer and employee existed at the time of the alleged accidental death; and *second,* that written claim for compensation made November 15, 1955, was within the time provided by the statute.

The facts are undisputed and may be summarized as follows: John M. Pinkston, the deceased workman, was a motorcar salesman and had been in the employment of respondent since 1934.

He was 49 years of age, six feet tall and of moderate slender build. On February 18, 1955, he reported for work at respondent's salesroom before 9:00 a. m. and was directed by respondent's manager to go to a farm auction to protect the sale of respondent's pick-up truck, which had been advertised on the sale bill, and to stay at the sale until the truck was sold or "bid in" by him for respondent. Pinkston was in the salesroom about 30 minutes before leaving for the sale but did no physical work except to fill respondent's car with gas. When he left the salesroom to go to the sale J. A. Robinson left with him in respondent's car. He first drove to a hotel to ascertain if another man wanted to ride with him to the sale. Upon learning that this man was not going, he drove to a liquor store and purchased a half pint of liquor and then drove to his home where he and Robinson had a hot drink of whiskey. While there, Pinkston stated he was not feeling well and that he thought a hot drink would help him.

Pinkston was driving the car, and Robinson and he arrived at the sale about 10:30 a. m. and he parked the car on a hill about 100 yards south and west from where the sale was being conducted. There was a ravine between the hill and the place where the sale was being held and due to the mud it was impassable for automobiles.

Both men sat in the car and talked a few minutes before they got out and walked down to the sale. Robinson went a little ahead of Pinkston and did not actually see Pinkston walk down to the sale but did see him there about 5 minutes after Robinson left the car. Tom Herzet, who was in attendance at the sale and who had known Pinkston for about 30 years, saw Pinkston sitting in his car about 11:30 a. m.; however, Robinson saw Pinkston at the sale about 30 minutes before he (Robinson) went to lunch at noon. Before Robinson went to lunch he asked Pinkston if "he hadn't better go down to dinner." Pinkston stated he wanted to see an electric fence sell first. Herzet saw Pinkston and the pick-up truck where the sale was being held and Pinkston told him "he was out there with a pick-up truck." This was around noon and the auctioneer was still selling miscellaneous items, he had not reached the "bigger stuff" or the pick-up truck, and the sale continued through the noon hour. Pinkston told Herzet he was going to lunch and asked Herzet if he wanted to go with him. Herzet said he had already eaten but after Pinkston had gone he decided to get a cup of coffee and

a piece of pie. Lunch was being served in a garage approximately 100 yards west of where the sale was being held.

The day in question was cold and drizzly with a little snow mixed with the rain; the temperature was about freezing; the ground was saturated, sticky and muddy, but not frozen; the mud was over the top of the men's overshoes. Pinkston was dressed about the same as other men at the sale; he was wearing woolen trousers, a woolen winter shirt, a Navy jacket with fur lining; an overcoat and four or five buckle overshoes.

In order for Pinkston to get from the sale to where lunch was being served he had to walk down the side of the ravine and up a hill. When Herzet got up to the garage he saw Pinkston eating a bowl of chili. Pinkston was standing outside the garage as there was no place to sit down. Pinkston said, "this is awful good chili, but it isn't very good for ulcers," he then turned around, poured the chili out and raised his hand like he was reaching for a cigarette in his shirt pocket and fell over backwards. He made no outcry; just moaned for a minute or two, and when a doctor examined him about 15 minutes later, he was pronounced dead.

We shall note the medical testimony of the doctor who performed the post-mortem on decedent only to state that he testified decedent had a coronary occlusion, acute, which had not existed for any period of time prior to death; that the walking and cold temperature constricted the coronary arteries and would aggravate and precipitate the attack decedent had; that "it is only when there is a sudden shock to the heart which causes this ventricular fibrillation that causes death"; that an infarction causes a muscle to die and in a coronary occlusion generally an infarction occurs in a short time, but the autopsy did not show there was any muscle infarction; that the fact there was no infarction, the occlusion, in his opinion, existed only a matter of minutes; that he found pathology in the mitral valve; and, that he did not think the complaint of Pinkston not feeling well two hours prior to the attack had any effect. He further testified that the heart valve, being in poor condition, might have made decedent feel ill but the clot itself would have to be more acute than that; that the clot was in the circulatory system and slipped into the coronary vessel but he thought the clot came there suddenly—within minutes—causing the heart to go into fibrillation, and that the clot itself did not loosen until shortly before decedent's death. In response to a hypothetical question detailing decedent's ac-

tivities at the sale, his manner of dress and the condition of the ground and weather, he made the following answer:

"Well, that opinion is that the cold weather and the additional exertion were contributing factors which probably precipitated the attack."

Omitting portions relating to compensation and expenses found to be due under the Workmen's Compensation Act, the all decisive findings made by the trial court in rendering its judgment, in part, read:

"It is found, in addition to the admission of the parties, that on February 18, 1955, decedent met with personal injury by accident which caused his death the same date, that decedent's accidental injury arose out of and during the course of his employment with respondent and that the relationship of employer and workman existed between respondent and decedent at the time of the accidental injury and death. It is further found that claimant was decedent's sole dependent at his death; that claimant was totally dependent on decedent for support at the time of death and that claimant is entitled to be reimbursed for the funeral expense, which it is found she has paid, up to the statutory amount."

Appellants first contend there was no evidence justifying a finding of personal injury by accident which resulted in decedent's death and cite *McMillan v. Kansas Power & Light Co.*, 157 Kan. 385, 139 P. 2d 854, and analogous cases where we have held that in a compensation case a dependent must show there was a personal injury by accident (*Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793; *Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516; *Baker v. Shell Petroleum Corp.*, 132 Kan. 776, 297 Pac. 418; *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820). In making this contention appellants candidly concede that the sufficiency of evidence to support a finding of fact is a question of law to be determined by this court on appellate review (*Hill v. Etchen Motor Co.*, 143 Kan. 655, 56 P. 2d 103; *Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846; *Long v. Lozier-Broderick & Gordon*, 158 Kan. 400, 147 P. 2d 705; *Coble v. Williams*, 177 Kan. 743, 282 P. 2d 425; *Barr v. Builders, Inc.*, 179 Kan. 617, 296 P. 2d 1106); that in so doing it is necessary to determine whether the record contains any evidence which tends to support the judgment rendered, and in considering all of the evidence, this court is required to review all testimony in the light most favorable to the prevailing party below and that if, when so considered, the record contains any evidence which supports the trial court's judgment, that judgment must be affirmed (*Silvers v. Wakefield*, 176 Kan. 259, 270 P. 2d 259, and cases there cited).

The term "personal injury" as used in our Workmen's Compensation Act (G. S. 1949, 44-501) is generally construed as meaning any lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of a workman's usual labor; and, it is not essential that the disorder be of such character as to present external or visible signs of its existence (*Gilliland v. Cement Co.*, supra; *Peterson v. Safeway Stores*, 158 Kan. 271, 146 P. 2d 657; *Hill v. Etchen Motor Co.*, supra; *Bender v. Salina Roofing Co.*, 179 Kan. 415, 295 P. 2d 662).

The term "accident" as used in this same statute was long ago construed and applied by Mr. Justice Burch in *Gilliland v. Cement Co.*, supra, and consistently followed since that time, as meaning an occurrence or event which is undesigned, sudden and unexpected, usually of an afflictive or unfortunate character and often, but not necessarily, accompanied by a manifestation of force (*Gilliland v. Cement Co.*, supra; *Gilliland v. Zinc Co.*, 112 Kan. 39, 209 Pac. 658; *Stringer v. Mining Co.*, 114 Kan. 716, 220 Pac. 168; *Riggs v. Ash Grove L. & P. C. Co.*, 127 Kan. 91, 272 Pac. 153; *Harmon v. Larabee Flour Mills Co.*, 134 Kan. 143, 4 P. 2d 406; *Lee v. Lone Star Cement Co.*, 142 Kan. 349, 46 P. 2d 864; *Williams v. Cities Service Gas Co.*, 151 Kan. 497, 99 P. 2d 822; *Carney v. Hellar*, 155 Kan. 674 127 P. 2d 496; *Peterson v. Safeway Stores*, supra; *Workman v. Johnson Bros. Construction Co.*, 164 Kan. 478, 190 P. 2d 863).

Was Pinkston's death caused by "personal injury by accident"? The trial court answered that question by an affirmative finding. It would serve no useful purpose to reiterate the testimony of all the witnesses on that subject. Both parties concede, and the evidence was ample from which it reasonably can be inferred, that Pinkston's death was caused by coronary occlusion, acute, which had not existed for any period of time prior to death.

It is clear from the record that Pinkston sustained personal injury within the meaning of the statute under consideration. This court has previously held that coronary occlusion, coronary thrombosis, cerebral hemorrhage, thrombosis or hemorrhage, or heart failure—acute, which resulted in death or disability to a workman, was personal injury by accident when it arose out of and was received in the course of the employment (*Riggs v. Ash Grove Lime & Portland Cement Co.*, 131 Kan. 244, 289 P. 2d 410; *Carney v. Hellar*, supra; *Peterson v. Safeway Stores*, supra; *Burk v. American Dist. Tel. Co.*, 160 Kan. 519, 163 P. 2d 402; *Workman v. Johnson Bros. Construction Co.*, supra; *Earhart v. Wible Ice & Cold Storage*

*Co.,* 150 Kan. 695, 95 P. 2d 366; *Hill v. Etchen Motor Co.,* supra). It is likewise clear that all the characteristics of an accident were present: The occurrence was sudden, unexpected and undesigned by Pinkston, and was of an afflictive and unfortunate character. The circumstances surrounding Pinkston's activity at the sale, his walking up and down the ravine and standing around in heavy sticky mud over his overshoes, his being out in the rain in temperature near freezing for approximately one hour and a half together with the fact of his heavy clothing clearly were such as would have authorized the trial court, under the evidence presented, to relate the coronary occlusion to physical exertion, and to conclude that such exertion in the rain in freezing temperature was a contributing factor which aggravated and precipitated the sudden entrance of the blood clot from the circulatory system into the coronary vessel causing his fatal seizure, and was as distinctly traumatic as if the heart had been stopped by the violent application of force from without. The findings of the trial court that Pinkston received personal injury by accident, within the meaning of G. S. 1949, 44-501, are supported by sufficient competent evidence and cannot be disturbed.

Did the record show or tend to show Pinkston's death was the result of personal injury by accident "arising out of and in the course of employment"? It is essential that the accident which causes injury to a workman arise "out of" and "in the course of" the employment. (G. S. 1949, 44-501.) These terms are used in the conjunctive and both conditions must exist. (*Rush v. Empire Oil & Refining Co.,* 140 Kan. 198, 34 P. 2d 542.) The terms are not to be confused; they mean separate things with respect to the application of the statute. The phrase "in the course of" employment is sometimes referred to as "during" or "while" the employment is in progress; also, that which happens while a workman is at work in the employer's service. Stated another way, personal injury by accident befalls a workman if it occurs while he is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time. Some of our decisions to this effect are: *Fairchild v. Prairie Oil & Gas Co.,* 138 Kan. 651, 27 P. 2d 209; *Evans v. Western Terra Cotta Co.,* 145 Kan. 924, 67 P. 2d 426, *Floro v. Ticehurst,* 147 Kan. 426, 76 P. 2d 773; *Hudson v. Salina Country Club,* 148 Kan. 697, 84 P. 2d 854; *Brandon v. Lozier-Broderick & Gordon,* 160 Kan. 506, 163 P. 2d 384; and, *Carney v. Hellar,* supra.

The phrase "arising out of" employment points to the cause or origin of the accident and requires some causal connection between the injury and the employment. An injury arises out of employment if it arises out of the nature, conditions, obligations or incidents of employment. (*Rush v. Empire Refining Co.*, supra; *Holloway v. Consolidated Gas, Oil & Mfg. Co.*, 152 Kan. 129, 102 P. 2d 987; *Repstine v. Hudson Oil Co.*, 155 Kan. 486, 126 P. 2d 225; *Carney v. Hellar*, supra; *Pearson v. Electric Service Co.*, 166 Kan. 300, 201 P. 2d 643; *Neff v. Henry Wagner Transport Co.*, 177 Kan. 738, 281 P. 2d 1109.)

With these rules in mind we examine the record in the light most favorable to claimant, to ascertain if there was sufficient competent evidence to support the trial court's finding on these points. Pinkston's instructions on the day in question were specific. He was directed to attend the farm sale to protect respondent's interest in a pick-up truck which had been advertised on the sale bill, and to stay at the sale until the truck was sold, or to bid it in if it did not bring what respondent thought it should. The pick-up truck was taken to the farm prior to the sale and was there when Pinkston arrived. Upon arrival he parked his car on a hill about 100 yards from where the sale was being held—a ravine and the heavy mud prevented his driving closer. Appellants contend the evidence does not infer that it was necessary for Pinkston to leave his car until the auctioneer reached the sale of machinery and in particular the pick-up truck; that when Pinkston left the car and walked to the auction it was for his own convenience and not part of his employment; and further, that the record is silent as to any requirement that Pinkston remain at the sale and eat his lunch and that he could have returned to town for that purpose.

To carry out respondent's direction, it was necessary that Pinkston get out of the car and go to the place of the auction to ascertain its progress and to determine when the pick-up truck might be offered for sale. This was in the course of his employment. In fact, this was the only way Pinkston could properly carry out respondent's direction—by obtaining information when the pick-up truck might be sold and be present. The auctioneer was in charge of the sale and any item might have been offered at any time. The fact that Pinkston wanted to watch an electric fence sell before he went to lunch did not alter his employment or lessen his duty to respondent to be present when the pick-up truck sold. At

noon the pick-up truck had not been sold and the sale continued. Pinkston may have thought it unwise to return to town for lunch since the sale was continuing and the pick-up truck might be sold in his absence, but, regardless of that, there is no finding, nor is there any evidence that Pinkston was instructed by respondent not to eat lunch at the sale but to return to town to do so. Indeed, the evidence is to the contrary—to stay at the sale until the pick-up truck was sold or bid in. His mission not being accomplished, Pinkston had the right, as incidental to his employment, to eat lunch on the grounds where it was being served. To get to the garage necessitated his walking through the mud and over uneven ground. The medical testimony was that the additional physical exertion aggravated and precipitated his fatal seizure. The contention of appellants that the "employment" only contemplated Pinkston's driving to the sale and sitting in his car until the moment the pick-up truck was offered for sale is too narrow.

This court has held that our Workmen's Compensation Act prescribes no standard of health for a workman and if his physical structure gives way under the stress of his usual labor, his death is an accident which arises out of his employment. (*Carney v. Hellar*, supra; *Gilliland v. Cement Co.*, supra; *Harmon v. Larabee Flour Mills Co.*, supra; *Bender v. Salina Roofing Co.*, supra.)

Viewing all of the evidence in the light most favorable to claimant, we conclude that under the conditions and circumstances then existing, as disclosed by the record, Pinkston received personal injury by accident which arose out of and in the course of his employment, and the trial court was justified in so finding.

Appellants forcibly contend that the written claim for compensation was not made within the time provided by statute. One question is here presented. Was claimant entitled to one year in which to make claim pursuant to L. 1955, Ch. 250, § 13, effective May 1, 1955 (G. S. 1955 Supp. 44-520a), or only eight months under the statute in force on the date of the accident, *i. e.*, G. S. 1949, 44-520a? The accident occurred February 18, 1955, and written claim for compensation was served November 25, 1955, more than eight months after the accident. It is conceded that if the provisions of G. S. 1955 Supp. 44-520a apply, the claim for compensation was filed within the time prescribed.

A similar question was determined by this court in *Dobson v. Wilson & Co., Inc.*, 152 Kan. 820, 107 P. 2d 676, wherein it was held:

"G. S. 1935, 44-520a, providing that claim for compensation must be served upon the employer within ninety days after the accident or within ninety days after the last payment of compensation, was in effect at the time of the accident. The above section was amended by G. S. 1939 Supp., 44-520a, to make the period one hundred twenty days. After it took effect the employer ceased payments of compensation, and after ninety days a claim was served. *Held, that the provision as to time of service was not a substantive part of the contractual relation, but was procedural and remedial in nature, and whether the claim was served in time was to be determined under the statute as amended."* (Syl. 1.) (Emphasis ours.)

In the opinion it was said:

"Whether we view the section under consideration as in the nature of a condition precedent or as a statute of limitations, if the written claim is not made in time, proceedings for compensation may not be maintained. In this case the period of limitation was lengthened. . . . *On its face the amended statute acted prospectively in the absence of some legislative declaration to the contrary, and there is none."* (l. c. 822.) (Emphasis ours.)

Appellants seek to avoid the effect of this holding in two respects: *First,* they urge, that there, both the right to compensation and the time to make claim accrued after the effective date of the amending statute, whereas here, the right to compensation accrued at the time of the accident when G. S. 1949, 44-520a was in effect, but the claim was made pursuant to longer limitation period prescribed by G. S. 1955 Supp., 44-520a, thus affecting the substantial rights of the parties and unjustly altering the obligation of appellants; *second,* that the Dobson case, *supra,* was erroneously decided in 1940, and should not be followed as precedent.

We shall first consider appellants' second contention since its determination controls, to a large degree, the disposition of the first. It is urged the Dobson case, *supra,* is erroneous for the reason it held the amended statute, there under consideration (G. S. 1939, Supp., 44-520a, L. 1939, Ch. 213, § 3), which extended the period to make claim from ninety days after an accident to one hundred and twenty days, operated prospectively in the absence of some legislative declaration to the contrary, and that there was no such declaration; that counsel and this court overlooked G. S. 1935, 44-505 (L. 1935, Ch. 202, § 1), then in force and effect, which, among other things, provided:

". . . *This act shall not apply in any case where the accident occurred before this act takes effect,* and all rights which have accrued, by reason of any such accident, at the time of the publication of this act, and the remedies

now existing therefor, shall be saved, and the court shall have the same power as to them as if this act had not been enacted. . . ." (Emphasis ours.)

that the above language was a legislative declaration to the contrary which expressly prohibited the operation of the amended statute (G. S. 1939 Supp., 44-520a, L. 1939, Ch. 213, § 3) from being applicable to an injury occurring prior to its effective date, and, therefore, not available to extend the period within which claim might be made. Further, with respect to this precise question, appellants contend that when L. 1955, Ch. 250 became effective May 1, 1955, and amended, among other statutes, G. S. 1949, 44-520a relating to claim for compensation and fixing a time limit, and G. S. 1949, 44-505, prescribing the application of our Workmen's Compensation Act, the identical language, above quoted and a part of G. S. 1949, 44-505, was re-enacted and embodied in G. S. 1955 Supp., 44-505 (L. 1955, Ch. 250, § 2), which, in part reads: "This act shall not apply in any case where the accident occurred before this act takes effect . . .," and thus, the application of G. S. 1955 Supp., 44-520a (L. 1955, Ch. 250, § 13) was expressly limited to claim for compensation for accidents occurring after May 1, 1955, and its provisions are not, therefore, applicable to the claim for compensation in this case.

The fallacy of appellants' contention is that while our present statute, G. S. 1955 Supp., 44-505, here under consideration, has been amended many times throughout the years since its first enactment in 1911, (L. 1911, Ch. 218, § 6) its provisions, above quoted (G. S. 1935, 44-505, L. 1935, Ch. 202, § 1) have been re-enacted and continued verbatim in each amendment since, except for a minor verbal change in 1927. (See, L. 1913, Ch. 216, § 2; L. 1917, Ch. 226, § 1; R. S. 1923, 44-505; L. 1927, Ch. 232, § 5; L. 1935, Ch. 202, § 1; L. 1953, Ch. 243, § 1; and, L. 1955, Ch. 250, § 2.) In 1868 (G. S. 1868, Ch. 104, § 1) the legislature enacted a General Statute to assist in the construction of all statutes of the state, which now appears as G. S. 1949, 77-201 *First*, and reads, in part, as follows:

"The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment."

Our decisions are in accord with the statute. In *City of Troy v. A. & N. Railroad Co.*, 11 Kan. 519, this court construed the statute, above quoted, and in the opinion it was said:

". . . Since the decision in *Gordon v. The State,* 4 Kan. 489, the legislature has established a new rule as to the effect of changes in the statutes. The last sentence of the first paragraph of § 1 of ch. 104, Gen. Stat., 999, reads: 'The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment.' . . . We have heretofore considered the power of the legislature to establish such rules of statutory construction, and the effect of them. *Gilleland v. Schuyler,* 9 Kan. 569; *The State v. Boyle,* 10 Kan. 113; *The State v. Crawford,* supra, 32. It does not appear to us that § 16 of art. 2 of the constitution conflicts with this rule. The purpose of that was to make the amended section or sections contain the whole law as it was thereafter to exist, and not to prevent the legislature from continuing in force the unchanged portions of the amended law. The rule in effect says the amended law shall be restropective in its operations so far as it is the same as the prior law. This, in a question like the one at bar, is within the legislative power." (l. c. 531, 532.)

In *Bailey v. Turner,* 108 Kan. 856, 197 Pac. 214, it was said:

". . . The rule that 'the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment' (Gen. Stat. 1915, § 10973, subdiv. 1) 'implies that ordinarily language of an earlier statute which is preserved in an amendment is deemed to speak as of the time of the original enactment, and not of the later one. . . .'" (l. c. 858.)

In *Franklin Township v. County Treasurer,* 112 Kan. 11, 209 Pac. 976, it was said:

"The usual rule of construction is that language of an earlier statute which is preserved in an amendment is deemed to speak as of the time of the original enactment, and not of the later one. This follows from the statutory rule that 'the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment.'" (Gen. Stat. 1915, § 10973, subdiv. 1.)

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"The reënactment of a section of the statute incidental to its amendment in one respect does not give to the portion which is unchanged the effect of a new enactment so as to constitute later legislation than statutes existing at the time of the amendment and thereby effect their repeal by implication. (*The State v. Kansas City,* 83 Kan. 431, 111 Pac. 493; *Wilson v. Edwards County,* 85 Kan. 422, 425, 116 Pac. 614.)"

In *State v. Coleman,* 168 Kan. 159, 211 P. 2d 81, the court said:

"The provisions of the old law and the new one with reference to injunctions, abatement and padlock are basically the same. When that situation prevails, it is the expressed intention of the legislature of this state to treat a new statute as a continuation of the old one whenever possible. Such rule of constructon is stated in section 77-201, G. S. 1935, as follows:" (l. c. 163.)

Time and space do not permit a review of the many decisions

dealing with this statute but for further reference the reader is directed to the annotations to G. S. 1949, 77-201 *First*. This statute and our decisions compel the application in this case of the rule that ordinarily language of an earlier statute, which is preserved in an amendment, is deemed to speak as of the time of the original enactment, and not of the later one. The rule, however, is subject to the express reservation that it is not to be followed when such condition would be inconsistent with the manifest intention of the legislature or repugnant to the context of the statute. (*City of Emporia v. Norton*, 16 Kan. 236.)

The legislative history of the source of prior law of G. S. 1955 Supp., 44-505 demonstrates the legislature approved the language in question by re-enactment seven times and its being cognizant of G. S. 1949, 77-201 *First*, compels us to conclude it intended the language to speak as of the time of the original enactment and not the time of the later amendment—May 1, 1955. Such a construction is not inconsistent with the manifest intent of the legislature or repugnant to the context of the statute. For this reason, the provisions of G. S. 1955 Supp., 44-505 do not prevent the application of our Workmen's Compensation Act to workmen who were injured prior to May 1, 1955. We, therefore, conclude the Dobson case, *supra*, was correctly decided and reaffirm its holding, notwithstanding the contentions made by appellants here, was not there advanced.

In considering appellants' first contention we note the time in which claimant had to serve claim for compensation under G. S. 1949, 44-520a had not expired when G. S. 1955 Supp., 44-520a became effective. The amendment lengthened the period to make claim, and claim was served pursuant to its limitation. Did this alter the obligation of appellants in any manner? We are of the opinion it did not. It is settled in this jurisdiction that it is within the power of the legislature to amend a statute of limitations either by shortening or extending the time in which an existing cause of action may be barred. (*Milbourne v. Kelley*, 93 Kan. 753, 145 Pac. 816.) Having concluded that the Dobson case, *supra*, was correctly decided, the provisions of G. S. 1949, 44-520a, as to time of service, were not a substantive part of the contractual relation between the decedent and respondent, but were procedural and remedial in nature, and, the claim, having been served within the time prescribed by G. S. 1955 Supp., 44-520a was valid as against appellants. (*Dobson v. Wilson & Co., Inc.*, supra; *Ellis v. Kroger Gro-*

*cery Co.,* 159 Kan. 213, 152 P. 2d 860; *In re Estate of Reed,* 157 Kan. 602, 142 P. 2d 824.)

Having reviewed claimant's evidence and considered all the facts and circumstances in the light most favorable to the claimant, as we are enjoined to do both by the statute and the rule so often reiterated, we conclude there was no error and that there was sufficient competent evidence to support the findings and judgment.

The judgment is affirmed.

PRICE, J., dissents in part, being of the opinion that it cannot be said the workman's death was the result of personal injury by accident arising out of his employment.