No. 40,599

MARION A. TABER, *Appellee*, v. WILLIAM TOLE, d/b/a TOLE LANDSCAPE COMPANY, and CENTRAL SURETY & INSURANCE CORPORATION, *Appellants*.

(313 P. 2d 290)

Opinion filed July 3, 1957.

*P. K. Smith,* of Wichita, argued the cause, and *F. C. McMaster* and *William P. Higgins,* both of Wichita, were with him on the briefs for the appellants.

*Otto J. Koerner,* of Wichita, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is a workmen's compensation case. The question involved is whether, under the facts and circumstances shown, injury resulting from a heatstroke is compensable. The commissioner and trial court held that it is, and the employer and its insurance carrier have appealed.

Claimant had lived in Independence all of his life. In the summer of 1953 he joined the army and served in various localities until May, 1955, at which time he received his discharge in Texas. He sought employment in Houston, and about the middle of July of that year returned to Independence. He was 22 years of age.

On August 1st, 1955, he went to work for the Tole Landscape Company of Independence. This company was engaged in the business of landscaping, trimming trees, taking care of yards and shrubs, and the like. On the morning of August 1st claimant, in company with other employees, drove to the nearby town of Humboldt to do some tree trimming and yard work at a residence there. The maximum temperature in Humboldt that day was 98 degrees. During the day claimant and his fellow workers trimmed trees, cleaned up debris, and did other work of like nature. Claimant complained of not feeling well and did not eat his lunch. During the day he and others drank cold water from a five-gallon can which they had brought along. Claimant advised the foreman that if he did not feel better the next morning he probably would not return to work.

On the next day, August 2nd, claimant and other employees worked on a job in Independence, trimming trees and cleaning up the yard. Part of the time claimant was up in the trees sawing off limbs, and the remainder of the time he was on the ground cleaning and raking. It was another hot day, the maximum temperature being 98 degrees. Some of the work was in the direct sunlight and some was in the shade. Claimant, like the other employees, drank from a water cooler and from a house hydrant during the day. He took a salt tablet approximately every hour. The work they were

doing was "hot and hard." Claimant did not complain of feeling ill and ate his lunch. At quitting time, about 4:30 in the afternoon, he was driven to his home by a fellow employee, and apparently nothing was wrong with him. He went into his house and a short time later was found unconscious in the kitchen.

A local physician was called and claimant was removed to a hospital. His temperature was in excess of 108 degrees. He remained in the hospital at Independence for about two weeks and then was removed to the Veterans Hospital in Wichita where he remained for a considerable period of time, suffering from permanent nerve and brain damage resulting in partial paralysis. His condition was diagnosed by both the Independence and Wichita physicians as being the result of "heatstroke."

The record contains considerable evidence as to the seriousness of claimant's disability, but for our purposes need not be discussed in detail. He testified that he must have become unconscious while on the job on the day in question; that he did not remember being driven home and remembered nothing from about the middle of that afternoon until he "awakened" in the hospital several days later. August 2nd, while extremely hot, was no hotter than it had been in Independence and in that area for about a month previous thereto. In other words, there really was nothing particularly "unusual" about the temperature on the day in question. It was just plain "good and hot," a condition with which all living in the area during that time of year were familiar.

The trial court found that claimant suffered an accidental injury arising out of and in the course of his employment, and that the heatstroke and injury suffered by him were brought about by the work he was doing under the circumstances shown by the evidence—that is, the extreme temperature coupled with the fact he was not accustomed to hard manual labor under such conditions.

The employer and its insurance carrier contend the court erred in finding that claimant sustained personal injury by accident arising out of and in the course of his employment; that the findings are not supported by the evidence and are contrary thereto; that the judgment entered is not supported by substantial competent evidence, and that claimant is not entitled to compensation.

In our opinion the basic question in the case really narrows down to whether it may be said claimant sustained personal injury by accident arising out of his employment.

Although many compensation cases dealing with injuries resulting from exposure to the elements, such as heat or cold (both artificial and natural), lightning, storms, and the like, are cited, we know of no case precisely parallel to the one before us. Both parties cite the case of *Murphy v. I. C. U. Const. Co.*, 158 Kan. 541, 148 P. 2d 771, in which injury resulting from frostbite of the fingers was held to be compensable. In the course of the opinion the court quoted with approval from the annotation appearing at 13 A. L. R. 974 to the effect that if an employee, by reason of his duties, is exposed to a special or peculiar danger from the elements—that is, one greater than other persons in the community—and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident arising out of and in the course of the employment. Reference also was made to six other annotations on the subject appearing in subsequent volumes of A. L. R. At page 979 of the mentioned annotation in 13 A. L. R. appear the statements that whether injuries caused by the weather and climatic conditions arise out of the employment is a question upon which the decisions of courts are not entirely harmonious, but that injury from heatstroke or sunstroke is generally considered to be an injury by accident.

In 58 Am. Jur., Workmen's Compensation, § 260, p. 760, it is said:

"Injuries resulting from exposure to meteorological or weather conditions are generally classed as risks to which the general public is exposed, and as not coming within the purview of workmen's compensation acts, where the employment involves no special or peculiar risk of injury from such cause. It is generally recognize, however, that if an employee, by reason of his duties, is exposed to a special or peculiar danger from the elements—that is, one greater than other persons in the community—an injury proximately resulting from such cause, within the sphere of the employment, arises out of the employment, within the meaning and operation of the compensation acts. The foregoing rules have been applied in the case of injuries resulting from freezing or frostbite, sunstroke or heat prostration, . . ."

In the recent case of *Watson v. Sam Knight Mining Lease*, 78 Ariz. 114, 276 P. 2d 536, it was held that injury from heat exhaustion is compensable where the employee, because of the conditions of the employment, is subjected to a risk beyond the risk to which the general public is exposed, from climatic conditions in the locality.

In *Hoag v. Laundry Co.*, 113 Kan. 513, 515, 215 Pac. 295, appears this statement:

"It is now generally recognized that what is known as heat stroke is an accident, within the meaning of compensation laws, and frostbite has been placed in the same category."

In *Rush v. Empire Oil & Refining Co.,* 140 Kan. 198, 34 P. 2d 542, it was said that when the injury occurs from the elements the better reasoning is that there is no liability unless the employment in some specific way reasonably can be said to have increased the workman's hazard to such element.

It has been held many times that the compensation act prescribes no standard of health for a workman, and if his physical structure gives way under the stress of his usual labor his death is an accident which arises out of his employment. (*Carney v. Hellar,* 155 Kan. 674, 127 P. 2d 496; *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197.)

From the foregoing, and other authorities dealing with injuries resulting from exposure to the elements, such as in this case—natural heat—the general rule appears to be that the injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed, and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person, familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. It excludes, however, an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment. In other words, the causative danger must be peculiar to the work and not common to the neighborhood—that is, the employment must bring with it greater exposure to injurious results than the exposure to which persons generally in the locality are subjected.

It is vigorously contended that because it was hot in Independence and the surrounding area on the day in question, and had been as hot or hotter in the area during the preceding month, claimant was exposed to nothing unusual and to no greater hazard than were all other residents of the community, and that his injury therefore cannot be said to have arisen out of his employment.

We are unable to accept this view.

As a practical matter, of course it was hot in Independence that day, and undoubtedly everyone in the community "felt the heat." Nevertheless, the medical evidence in the record is to the effect

claimant's injury was due to heatstroke, and that undoubtedly there was a direct connection between it and the work he was doing under the circumstances and conditions related. Under this record it cannot be denied that claimant's work exposed him to a greater danger than if he had not been working at all. In other words, his employment subjected him to a greater hazard or risk than that to which he otherwise would have been exposed, and although the risk was common to all who were exposed to the heat on the day in question, the true test in a case such as this is whether the employment exposed the employee to the risk. We have no difficulty in agreeing with the trial court that it did, and that there was a direct causal connection between the work and the injury.

The findings and judgment of the trial court are amply supported by the record and, no error being made to appear, the judgment is affirmed.