No. 40,992

PEARL ALPERS, Widow and Guardian of John Alpers, Minor (Henry E. Alpers, Deceased), *Appellee,* v. GEORGE-NIELSEN MOTOR CO., and UNIVERSAL UNDERWRITERS INSURANCE CO., *Appellants.*

(324 P. 2d 177)

Opinion filed April 12, 1958.

*Byron G. Larson,* of Dodge City, argued the cause, and *James A. Williams* and *C. W. Hughes,* both of Dodge City, were with him on the briefs for the appellants.

*Don C. Smith,* of Dodge City, argued the cause, and *W. C. Gould* and *R. R. Mitchell,* both of Dodge City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This action was brought by a dependent to recover compensation for the death of a workman under the provisions of the workmen's compensation act (G. S. 1949, Ch. 44, Art. 5). The

trial court made findings of fact in favor of the claimant, the widow and sole dependent of the deceased, and allowed compensation. Respondents bring the case here and contend that the trial court erred in two respects: (1) In finding that there was substantial evidence that decedent sustained personal injury by accident arising out of and in the course of his employment, and (2) in the amount of compensation awarded.

. It was stipulated that decedent was an employee of respondent motor company, operating under the workmen's compensation act, and that notice was received and written claim made within the statutory period.

A brief résumé of the pertinent facts follows: Henry E. Alpers, at the time of his death, was employed as a car salesman by respondent-appellant George-Nielsen Motor Company of Dodge City. During the course of his employment he occasionally went to Kansas City and elsewhere to pick up new cars, driving them back to Dodge City. On the night of November 7, 1956 he and his stepson had gone to Kansas City by rail for the purpose of picking up two new automobiles for respondent motor company. The next morning they were driven to the Buick warehouse in Kansas City, arriving there between 7:30 and 8:00 o'clock. The weather was cold—officially 32 to 34 degrees at the airport—a north wind was blowing and it was spitting snow. Alpers had no overcoat and stood in the cold outside the warehouse until it opened at 8:30 a. m. Although a man sixty-one years of age, with a heart condition and still recovering from an appendectomy performed on September 17, he appeared to be feeling good and in the best of spirits. Shortly after 10:00 a. m., he and his stepson drove one of the two promised new cars to a filling station some six blocks south and west of the warehouse, where Alpers left his stepson with instructions to drive the new car back to Dodge City. Facing the north wind, he walked back to the warehouse. As he reached the building, he met Reverend Everett J. Vaughan and told him that he regretted having made arrangements to drive the second car back to Dodge City as he did not feel well. Reverend Vaughan noticed that Alpers had his suitcoat collar turned up and appeared chilled. When he saw Alpers a few minutes later inside the warehouse he was dying. Decedent's body was taken to Providence Hospital in Kansas City, where Dr. William Lasser, deputy county

coroner, pronounced him dead. Doctor Lasser testified that death was due to an acute coronary occlusion.

Dr. Robert C. Gribble, a specialist in internal medicine and diseases of the heart, who each year attends at least two graduate schools dealing mostly with heart cases, testified that decedent had been a patient of his for the seven years preceding his death and that he had treated him last on October 10, 1956; that at that time he was convalescing satisfactorily from an appendectomy; that his blood sugar was a little higher than it should have been because of his diabetic condition; that he was still somewhat short of breath, especially on exertion, due to his heart condition, which resulted from overwork of the right side of the heart due to chronic lung conditions; and that the patient was continuing his heart medication [digitalis] on his advice. He further testified, "My opinion in this case, from knowledge of the patient and the history, would be that he died from an acute coronary occlusion or an acute pulmonary edema"; that decedent's condition was basically "myocarditis, chronic," which made him more predisposed to having a coronary occlusion. He further testified that he would assume decedent's type of heart disease would not cause death at rest and without excessive exertion, although at times and in certain cases normal walking is considered over-exertion; that, "My experience has been that exposure to the cold is one of the most common precipitating factors in the development of an acute coronary occlusion"; and that Alpers' exercise, his walking in the cold wind, was a contributing factor which aggravated and precipitated the sudden entrance of a blood clot from the circulatory system into a coronary vessel, which in turn caused death.

Dr. Sherman M. Steinzeig, witness for respondent and heart specialist, testified that there are many causes of sudden death but statistically the most likely cause is a coronary occlusion; that, "Certainly, exposure to cold, exertion, particularly cold and exertion above and beyond that that the patient is usually exposed to, as well as emotional strain, trauma, trauma due to surgery, can be precipitable factors, as well as any other precipitating factors"; that normal walking in 33 degrees Fahrenheit weather could possibly have been the contributing or precipitating factor which caused decedent's death; and that exposure to normal cold and normal exertion would be a precipitating factor in a coronary occlusion case.

The trial court found that Alpers sustained personal injury by

accident, resulting in his death, arising out of and in the course of his employment with respondent motor company.

Respondents first contend that there was no evidence justifying personal injury by accident which resulted in decedent's death. In making this contention, they concede that the sufficiency of evidence to support a finding of fact is a question of law to be determined by this court on appellate review. In so doing, it is necessary to determine whether the record contains any evidence which tends to support the judgment rendered, and in considering all of the evidence this court is required to review all testimony in the light most favorable to the prevailing party below. If, when so considered, the record contains any evidence which supports the trial court's judgment, that judgment must be affirmed. (*Silvers v. Wakefield,* 176 Kan. 259, 270 P. 2d 259; *McDonald v. Rader,* 177 Kan. 249, 277 P. 2d 652; *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 299, 303 P. 2d 197, and cases therein cited.)

Respondents rely on the recent case of *Taber v. Tole Landscape Co.,* 181 Kan. 616, 313 P. 2d 290, as holding that exposure to the elements must subject the employee to a greater hazard or risk than that to which he would have otherwise been exposed; that in the instant case the deceased was not exposed to any more risk than had he not been working and had merely walked to the corner grocery for a loaf of bread. We are unable to accept this view. It was stated in that opinion:

"It has been held many times that the compensation act prescribes no standard of health for a workman, and if his physical structure gives way under the stress of his usual labor his death is an accident which arises out of his employment. *Carney v. Hellar,* 155 Kan. 674, 127 P. 2d 496; *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197.)

"From the foregoing, and other authorities dealing with injuries resulting from exposure to the elements, such as in this case—natural heat—the general rule appears to be that the injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed, and the resulting injury." [1. c. 620]

The facts in the instant case and the question involved are somewhat similar to those in our recent case of *Pinkston v. Rice Motor Co.,* supra, and we think the rules of law as applied to the facts in that case are controlling here. We defined the terms "personal injury" and "accident," citing many of our authorities in support thereof, and no useful purpose would be gained in reiterating them

here. We also stated that this court has previously held that coronary occlusion, coronary thrombosis, cerebral hemorrhage, or heart failure—acute, which resulted in death or disability to a workman, was personal injury by accident when it arose out of and was received in the course of the employment. (*Riggs v. Ash Grove Lime & Portland Cement Co.*, 131 Kan. 244, 289 Pac. 410; *Carney v. Hellar*, supra; *Peterson v. Safeway Stores*, 158 Kan. 271, 146 P. 2d 657; *Burk v. American Dist. Tel. Co.*, 160 Kan. 519, 163 P. 2d 402; *Workman v. Johnson Bros. Construction Co.*, 164 Kan. 478, 190 P. 2d 863; *Earhart v. Wible Ice & Cold Storage Co.*, 150 Kan. 695, 95 P. 2d 366; *Hill v. Etchen Motor Co.*, 143 Kan. 655, 56 P. 2d 103.)

In the present case there is ample evidence that decedent's death was caused by coronary occlusion; that the occasion of his death was sudden, unexpected and undesigned; that the facts and circumstances surrounding decedent's activity from 7:30 a. m. until his death between 10:00 and 10:30 that morning—his standing outside in the cold for at least thirty minutes (from 8:00 to 8:30 a. m.) and subsequently walking six blocks into a cold north wind, in spitting snow and with the temperature at the freezing mark, being improperly dressed for the occasion—were such as would have authorized the trial court under the evidence presented to relate the coronary occlusion to physical exertion and to conclude that such exercise in freezing temperature was a contributing factor which aggravated and precipitated the sudden entrance of a blood clot from the circulatory system into a coronary vessel, which in turn caused death. Under the record, it cannot be denied that decedent's work exposed him to a greater danger than if he had not been working. His employment under the circumstances subjected him to a greater hazard or risk than that to which he would have otherwise been exposed. (*Taber v. Tole Landscape Co.*, supra.) We are of the opinion that the record discloses sufficient competent evidence to support the trial court's finding.

Respondents contend that the trial court erred in computing the amount of compensation due claimant. (G. S. 1957 Supp., 44-510.) They assert that decedent's earnings record introduced in evidence discloses that he worked for respondent motor company from June 16 until November 8, 1956, a period of twenty-one weeks, earning $1594.70; and that there was no evidence upon which the trial court could base its finding that decedent worked but eighteen weeks. The record shows that decedent's employment was interrupted by

illness.   Respondents have not made it affirmatively appear that the trial court erred in its finding and judgment.

In view of what has been said above, the judgment of the trial court is affirmed.

It is so ordered.

Jackson, J., not participating.

Price, J., dissents, being of the opinion the record fails to establish a causal relationship between the employment and death or that the death of the workman was the result of personal injury by accident arising out of the employment.